May it please the court, Yassin Almadani for plaintiff and appellant Dr. Firdos Sheikh with me at council table. I have my co-counsel Mr. Ibrahim. I want to apologize to Judge Forrester. I'm having a little bit of sinus issues so if I have trouble hearing the question I apologize in advance but I'll do my best. So if I may your honors, what we are requesting here is a very narrow remedy in an unusual circumstance and binding precedent in this circuit demands reversal because this court applying Abbasi has actually answered the and this court has held in Lenuza that the judicial branch is better suited for remedying circumstances where a court's integrity is compromised by the submission of false evidence in judicial proceedings. And this court didn't stop there in Lenuza. It didn't say that the judiciary is just better equipped. In fact, reading from the court's opinion, the court said the judicial branch, not Congress or the executive, is responsible, is responsible for remedying circumstances where a court's integrity is compromised by the submission of false evidence in a judicial proceeding. Let me ask you this. When you say that Lenuza is binding on us, are you suggesting that we would not undertake the two-step analysis that Egbert and several Supreme Court decisions have made have guided lower courts to say whether there's a new Bivens context and are there special factors? Would we, in your view, dispense with all that? In our view, your honor, yes. In our view that Lenuza actually is controlling in this case and so because Lenuza has decided this precise issue that's for the court and, you know, an allegation. Let me push back on that for a second because Lenuza involved a government attorney submitting a false document in a court, in a judicial proceeding, in an immigration proceeding. And here we don't have those allegations. There are allegations that certain federal officers falsified statements in a declaration or in affidavits in order to obtain an arrest, sorry, a search warrant. So, and there are Fourth Amendment claims that are being raised here that were not Lenuza. So I'm struggling with the notion that Lenuza is controlling, that it's directly on point to what we're dealing with here. That's a fair question, your honor. And my answer to that would be, you know, a few fold. First of all, as concerning the Fifth Amendment claim, we would say that Lenuza is controlling. And to be clear, our position is not just that there was something falsified in a search warrant. It's that evidence was falsified to have this doctor, this very decorated doctor, indicted. She was indicted actually because of this false evidence that was proper. And her life was thrown into shambles just because of the indictment. Any of us would say, what would happen to us, indicted for human trafficking, when we've lived a good life? It would throw our entire life into shambles. But coming back to your question, your honor, you know, in Abassi, and I'm going to quote Abassi here, some differences, of course, will be so trivial that they will not suffice to create a new Bivens context. So let me come to that Fifth Amendment issue. In Lenuza, when the court was making its decision it's holding, it went, even though it was a deportation proceeding, the court drew its principles from criminal proceedings. If you look at the Lenuza decision, it's all criminal proceeding principles. And in terms of the prosecutor, what the court did, because the prosecutor was claiming absolute immunity, and the court said, no, no, no, Mr. Prosecutor or Mrs. Prosecutor, you were acting in an investigatory role when you decided to falsify and submit this evidence. Here you actually have the investigators submitting the evidence. So Lenuza actually analogized to get to where it got using the principles that should be applied in this case that fits squarely here. But the problem is, if we go back to the two-step analysis under Egbert, you have to look at the new Bivens context from just the three Supreme Court cases, right? It's not from the authority. It's, is there a new context from either Bivens or Passman or Carlson that is being suggested here by a damages remedy? And it is, because even if it's analogized to criminal proceedings, the Supreme Court hasn't recognized that Bivens damages remedy for falsification of evidence in a criminal proceeding, has it? Your Honor, again, that's a fair question. By the way, I didn't reserve, I would reserve five minutes. But to answer the court's question, I think that... Well, just answer my question. Has the Supreme Court recognized the Bivens remedy for a prosecutor falsifying evidence in a court proceeding? No, it has not. Okay. Neither an agent. This, this is different from the... And Lenuza did recognize that in that case, it was a new Bivens context, yes? It did, it did. So what we're suggesting is case law has developed in this circuit. But it's more, in, in, in my view, it's more of an academic inquiry. Because again, what we end up with is the Egbert question. And the Egbert, and, and let's be clear, Egbert, and I'll quote Egbert, Egbert stated, rather than dispense with Bivens altogether, it chose not to do that in Supreme Court. We have emphasized that recognizing a cause of action under Bivens is a disfavored judicial activity. That's a quote from Egbert. So if we're to follow the Supreme Court and be faithful fully to the Supreme Court, not just the part that it's disfavored, but the part that it hasn't really been overruled, and courts should take a serious look at maybe the unusual case where it might be warranted, which is what this court did in Lenuza. And I, and I understand that point. I just would push back on the notion that we can dispense with the two-step analysis. And from my standpoint, I think you need to make the but still special factors don't apply. And we should still go ahead and recognize this damage as remedy. Allow me to make that argument, Your Honor. And I appreciate the court's concern. And I also agree that if we do that, it would be an even more defensible decision. So I agree with the court. So let's do the two-step analysis. And what, what the Supreme Court in Egbert stated is that often the inquiry resolves to a single question. And that question, I'll quote, whether there is any reason to think that Congress might be better equipped to create a damages remedy. And here the answer is a resounding no. And this court has already answered that question. The judicial branch, not Congress or the executive, is responsible for remedying this sort of harm, falsification, submission of falsified evidence before a That is correct. And it's such an important and fundamental right in our system, Your Honor. The Fifth Amendment, the Constitution itself, in black and white, gives the indictment power to a grand jury, which is an arm of the court, not an arm of the executive. It is a judicial proceeding. And the only role of the executive there is to present truthful and complete information so that the court or the grand jury sitting for the court can dutifully and independently Let me ask this. And so the government has created certain remedies that were, some of which were recognized in Egbert. One of them is, well, the Hyde Amendment. And then the other one is a code provision that applies to the entire Department of Homeland Security. Why aren't those alternative remedies dispositive of the question whether a special factor would counsel against recognizing a damages remedy? I can answer that, Your Honor. This, and this is why this is such an unusual case. The Hyde Amendment, and let me go back to the principle of Egbert. Again, the Supreme Court uses language very carefully. In the Supreme Court, let me quote, stated in Egbert, Congress has provided alternative remedies for aggrieved parties in Boole's position that independently foreclosed a Bivens action here. In Boole's position is very important. So we have to look in Dr. Blake's position. What is her position? The Hyde Amendment doesn't apply to her because her position is such that her case was dismissed, not on the merits, but because the government engaged in egregious Brady violations and delayed the case, we were hit with a pandemic. But see, I think that cuts against you. Because if her case had been dismissed because of the Brady violations, couldn't she have tried to seek relief under the Hyde Amendment? Sure. Well, I don't know if that would have been a dismissal. I don't believe that would have been a dismissal on the merits, Your Honor, but she does not. If the case was dismissed altogether based on Brady violations, that, I mean, the point that I'm trying to reach is just because the available remedies analysis doesn't turn on whether a particular defendant has access to all those remedies. Doesn't it turn on whether Congress has created alternatives such that the court should not step in and create new damages remedies in addition to? But it has to be for that class of plaintiff, Your Honor. Dr. Shaik is not a class of plaintiff for which Congress has created any remedies, and congressional inaction is not a reliable guide to determine legislative intent. That's a quote from this court's Pardozo opinion, which was quoting U.S. v. Kraft, the United States Supreme Court. For Dr. Shaik's very unusual case, that's why it's such an unusual remedy that we're asking for. In this unusual case where this innocent woman was charged with fabricated evidence, which goes to the heart of the Constitution and judicial powers, it's the executive that is stepping into the judiciary's lane by submitting false evidence and depriving the judiciary of its ability to independently carry out its duties. It's a very serious issue. And when Dr. Shaik is I think you might be overstating it slightly, because what we're talking about is a damages remedy. I mean, the judiciary is not in any way foreclosed from sanctioning or taking other action for misconduct that happens within the context of the courts. So it's not like the judiciary is totally impotent here. It's just a damages remedy that we're talking about. Don't you agree? Yes, Your Honor. But the person that's deprived of her reputation and of her life has nothing. And just to, I want to reserve some time, but just to speak to the 8 CFR 287, that's also not available to her because submission of false evidence is not one of the enumerated issues that you can complain for and the agents by the time her case was dismissed were retired so she couldn't even complain about them. She's in a very unique context. So if this court relies on Lanuza and says in this very unique context, because this woman, a person in Dr. Sheikh's position, quoting the Supreme Court, does not have any other available remedies, she would be completely out. In this very limited context, we would extend a Bivens remedy. I think this court would be faithful to Lanuza, to the Constitution, even to Egbert, which suggests that there are those unusual circumstances and it would be so limited, there would be no deluge of cases. I would reserve time to respond. Great, thank you. Good morning, and may it please the Court. Joseph Free for the appellees. This case presents a new Bivens context. It's not an employment discrimination case like Davis or Passman. It's not a deliberate indifference case like Carlson. And even though it arises in the law enforcement context, it's not Bivens. Just having a different law enforcement agency is enough to take this case outside of Bivens, as this court held in Mejia. And we've identified numerous other meaningful differences between this case and the Supreme Court's three Bivens cases in our brief. So because we're in a new context, this court faces one question. Is there any rational reason, even one, why Congress might be better suited to decide whether or not to create a damages remedy in this kind of case? And the answer is yes. There are several rational reasons. First, what I think is the lower hanging fruit here is the fact that Dr. Sheikh's claims implicate the fields of national security and foreign affairs, especially in the wake of Egbert and how Egbert analyzed this special factor. In Egbert, the Supreme Court held that practically any Bivens claim against a Border Patrol agent is not cognizable because of the Border Patrol's unique role vis-a-vis national security. Even a run-of-the-mill conventional excessive force claim, where literally a Border Patrol agent shoved an American citizen on American soil, if that kind of claim is not cognizable because of national security concerns, a type of claim that is heard day in and day out in courts across the country under Section 1983 against state actors, if that type of claim is not cognizable under Bivens, then certainly these claims are not cognizable, whether directed at the Homeland Security Investigations, the principal investigative arm of the Department of Homeland Security, and seeks to directly challenge the investigation and prosecution of trafficking and harboring undocumented foreign nationals and obstructing an investigation into the same, and also challenging the way in which IHS agents utilize Congress's T-Visa program to provide temporary legal status to the victims of such crimes as they assist in the investigation and prosecution. And that's enough, Your Honor. New context and at least one rational reason why Congress might be better suited to create a damages cause of action in this context. But there's more. There's also the existence of alternative remedial structures created by both the executive branch and by Congress. First, I wanted to touch on the Homeland Security's grievance process, 8 CFR Section 287.10. Now, Dr. Shea contended for the first time in her reply brief on appeal that this grievance process doesn't apply here because she does not challenge or her claims do not allege the violation of a law enforcement standard in 287.8. Now, this is wrong, but before I explain why, I believe we raised 287.10 as an alternative remedial structure in our motion to dismiss. Dr. Shea never raised this argument in her opposition, never raised it at the hearing, and even though the district court relied on 287.10 as an alternative remedial structure, Dr. Shea never raised this argument in her opening brief. It's only at the reply brief that we're seeing this argument. But in any event, it's incorrect, and that's because in Section 287.8C2 Romanet 1, that law enforcement standard governs the conduct of arrests, and it provides that persons cannot be arrested unless there is reason to believe that they committed an offense against the United States. Well, Dr. Shea asserts a false arrest claim in her complaint at Excerpts of Record 204, contending that she was arrested without probable cause because the evidence against her was allegedly fabricated. So clearly, she does assert that one of the law enforcement standards that HSI agents are obliged to follow was violated. Are the regulations broadly worded enough to even encompass non-arrest, you know, falsified evidence to obtain a search warrant improperly? Well, I would point the honor to 287.8G, which incorporates all DHS and DOJ guidelines and policies as law enforcement standards. And I would submit that at least one of those policies and standards probably prohibits fabricating evidence. And I wish I could be more specific, but again, Dr. Shea only raised this argument in her reply brief on appeal. What do you make of counsel's argument that these alternative remedies should actually apply to a defendant in their position? Well, Your Honor, I think as you alluded to in your questioning, that's not precisely the question. The question is whether or not, it's not whether a particular remedy applies to a particular plaintiff in a Bivens case, in a particular case. It's whether or not Congress or the executive have acted in the space. I would refer the court to the chambers decision, which states that any decision by Congress or the executive not to create an express cause of action where it has legislated suggests they have decided against creating such an action. This is a rational reason to think Congress is better suited to weigh the costs and benefits of a new cause of action in this space. So not only do we have DHS's administrative grievance process, we have another grievance process. I want to make sure that it's clear here. There's the 287.10, but there's also the ability to submit complaints to the Department of Homeland Security's Office of Inspector General and Director of, or Officer of Civil Rights and Civil Liberties, as this court noted in the Pettibone decision when it concluded that there were, that there existed the alternative remedial structures. That's a different complaint process that is available. At the time of Dr. Shake's case and at the time of Pettibone, it was codified at Appendix 3 to Title 5 of the U.S. Code. After December of 2022, it was recodified at 5 U.S.C. 417. So there's another, another administrative grievance process there. I will say that Pettibone came out after this district court's decision. This court is able to look at additional remedial structures per Egbert's footnote 3. 287.10, although it was considered an Egbert, was never raised below in the Ninth Circuit. But Justice Thomas, in his majority decision in footnote 3, said because the court has its own concomitant duty to decide whether or not to create a new damages remedy, is free to look at other potential alternative remedial structures. And so we have the executive's creation of alternative remedial structures. We also have Congress's actions in this space. We have the Hyde Amendment. We have the ability to submit a complaint for false imprisonment in the Court of Federal Claims. Certainly not all of these remedies are available to Dr. Shake. I would contend that the ability to submit a complaint to DHS, whether through 287.10 or through the other grievance process, are available to her. I don't see why they wouldn't be. And these individual agents and their conduct could be investigated, and such investigations have resulted in criminal charges in the past. So insofar as the Bivens remedy is all about deterrence, criminal prosecution, I can't think of any better deterrent than that. Now, so we've discussed the fact that Dr. Shake's claims arise in the fields of national security and foreign affairs. We've addressed the fact that there exist alternative remedial structures in this space. The next factor that I think counsels hesitation here is the fact that Dr. Shake's claims present an intrusion into law enforcement prerogatives. And this special factor has been recognized by numerous circuits. We have the Third Circuit in the Shea v. Wagon case, the Fourth Circuit in the Annaparetti case, the Eighth Circuit in Farah and Ahmed, and we also have district courts in this circuit, the Lowe case and the Libman case, and in the Second Circuit. Now, Dr. Shake argues- Now, these are the cases that I think your 28J letter referred to, the fabrication of evidence cases. Since the filing of our answering brief, some additional cases had come out, and our 28J letter includes those. The majority of these, however, are in our answering brief, I believe at footnote four, page 31, that collects these authorities from other circuits. Now, Dr. Shake argues that the facts underlying her Bivens claims here are largely in the public domain because of attachments that, in the criminal proceeding, various attachments to the suppression motions and the Brady motions are largely in the public domain, and as such, there wouldn't be an extensive intrusion into law enforcement prerogatives. But I think that falls into the trap that Egbert explained, which is the role of the court is not to assess or measure the degree of intrusion into executive or congressional prerogatives in a particular case. What the court's role is is to identify the existence of potential intrusion in these types of cases. And so I think that Dr. Shake's argument that the facts underlying her claims are in the public domain misses that point. But even if- I take it your argument is the risk of intrusion is that it would have to delve into reasons why prosecutors brought forward charges or sought indictment or other things within the executive branch's prerogative. Yes, Your Honor, because it's our position that- well, let me take a step back. The evidence that was allegedly fabricated in this case all has to do with a theory of physical coercion being imposed on these- on Prakash and Alfredo, a physical coercion theory of forced labor. Which was recounted in a search warrant affidavit in 2013 and also in support of T visa applications in 2014. Dr. Shake's indictment came down in 2018. And it's our position that the charges against her were brought based on economic coercion, withholding these men's wages, as well as legal coercion, threatening them with arrest and deportation. Dr. Shake disagrees. Dr. Shake contends that these charges would not have been brought- these trafficking charges would not have been brought without the alleged fabricated evidence of physical coercion. And without the trafficking charges, moreover, the harboring and obstruction and false statement charges would also not have been brought. So there's a dispute here. In order to litigate and defend this case would involve intrusion into prosecutorial deliberation as well as the grand jury is an arm of the judiciary. And what I understand that argument to be is that no hesitation is counseled here because there's no intrusion. The grand jury is just part of the judicial branch. But that- that's just incorrect. They- I'd refer the court to Justice Scalia's opinion in United States v. Williams. The grand jury is an independent body. It doesn't fall into any of the branches of government. And instead, both the executive and the judiciary play complementary roles. And who better than Congress to mediate those complementary roles? In fact, it's Congress who has legislated vis-a-vis grand jury secrecy in the form of Federal Rule of Criminal Procedure 6E as well as 18 U.S.C. 3322. And if Congress is the one legislating with respect to when grand jury secrecy can be overcome, then certainly it would seem to be at least rational that Congress would be better suited to be the one to create or decide to create a cause of action that would directly implicate grand jury secrecy. Let me ask you, do we- does this panel need to get into any question of whether LaNuza binds our decision in recognizing a damages remedy or not? No, Your Honor. I think that LaNuza is readily distinguishable from this case. In LaNuza, the court found that there were no national security or foreign affairs implications. Here, especially in light of Egbert, there are. In LaNuza, the court held that there were no alternative remedial structures in existence that counseled hesitation. Here, there are. There's a constellation of alternative remedial structures that certainly counsel the judiciary to stay its hand before intruding in this space. And in LaNuza, the court went out of its way to find that there was no intrusion into executive prerogatives by creating the cause of action in that case because, in fact, LaNuza went out of its way to suggest that the executive and the judiciary were aligned in that case, that there would be no intrusion. So to your question, Your Honor, I don't believe that- I think that LaNuza is distinguishable enough that this court can affirm the district court's judgment below without needing to decide whether or not LaNuza is or is not good law anymore. Well, I have no other questions. Let me see if Judge Forrest has anything. Thank you. I would just reiterate, this case is unlike any of the Supreme Court's three Bivens cases, and there are numerous rational reasons why Congress would be better suited to create a damages remedy in this space. Thank you very much. Great. Thank you, Mr. Freeh. Your Honor, thank you again. I'm going to try to move fast because I have little time. Just to be clear, false evidence here was presented to obtain an indictment, which is a far greater intrusion into what happened to Dr. Sheikh than just a search warrant. So it is, and it did have, massive implications on her life. The national security issue, that's a red herring. What are we saying? The issue here is that agents submitted perjurous certifications to have folks who are here undocumented, who are looking for benefits, immigration benefits, lied about a citizen to have her criminally prosecuted, and if we curb that activity, that has national security implications? It does not. It's so narrow. In this particular case, Your Honor, if agents want to provide benefits and provide perjurous certifications to USCIS, that's fine. But when they do it for the purpose of then bringing that person into court and lying to the court and committing perjury, that's when we're now in the lane of the judiciary, not the executive anymore. In terms of alternative remedies, 287, these agents are retired. That is not available to Dr. Sheikh. That, again, is why this is so very narrow. Counsel stated that there's probably some complaint procedure. It's not. It's not available to her. They were no longer there. In terms of congressional intent, counsel stated the law, and I don't believe that what counsel stated was correct. And I'll quote from the Ninth Circuit. Counsel quoted Chambers. That's a 2023 case. The quote here is, Congressional inaction is not a reliable guide to determine legislative intent. That is the 933, which quotes the Supreme Court, an older case in Chambers, U.S. v. Kraft, 535 U.S. at 287. Dr. Sheikh has no remedy available because nobody could have thought of her particular situation. It is unusual. It happens every 100 years. She was a victim of not only Brady violations but the pandemic hitting at that time. And that's why her case was dismissed as it was dismissed. And in the order, the court found that the court could understand why she would be so frustrated at not bringing the case, you know, and, you know, to this issue of economic harm. No. If the court reads our reply at the end, we quote the district court. Their entire case was built on force and all of that. But those are factual issues. Right now, we're here to really decide whether Lanuza has answered the expert question, and it has. And even if we analyze it in a new context, we can't ignore Lanuza. The issue of intrusion into executive activities, that also is a red herring, Your Honor, because we are not peering. There are well-established standards in Devereux. If this were a 1983 case, we would peer into grand jury transfers. We would peer into prosecutorial decisions. That's what we would do. There are well-established standards there. And here, a grand jury secrecy does not bar that. The counsel is incorrect. The Supreme Court has ruled that the grand jury is an arm of the court. And so... But how would you get to resolving this seeming dispute as to what were the grounds by which prosecutors sought an indictment? You know, forcibly keeping these people on the property, and the government is saying it was more economic related. But how would one even get to those questions without delving into internal matters of the executive branch? Because, Your Honor, what would the grand jury or the pedigree would sit and decide whether presented with, you know, all of the facts, whether a reasonable person could have come to a probable cause conclusion? I think that, and if this were a 1983 case, which have been, there are 1983 cases based on this Fifth Amendment issue where there's fabrication of evidence. And if it were, we would easily look into that evidence. Grand jury transcripts would be unsealed for that reason. That actually happens and we do it in 1983 cases. It's just that we have this development in the Bivens Law. But, you know, this development doesn't preclude Dr. Shake's case because Lanuza answers the Egbert question. And when you look at somebody in Dr. Shake's position, the egregious harm that's occurred to her, she has no other remedy. Nothing was available. Nobody thought of a person in her position. They couldn't have. It's so limited and so narrow that what we're asking the court to do here is fashion a very narrow remedy based on binding precedent in the circuit. Okay. Anything else? No, Your Honor. Thank you. Thank you. Counsel, thank you both for your helpful arguments. The matter will stand submitted.
judges: NELSON, FORREST, SANCHEZ